Please be seated. Morning. And before we call the case, before we don't take up anybody's time here, Justice Lytton was unable to be here this morning, unavoidably detained, but he will be participating in the decision here and will be listening to tapes of the argument and then conferencing the case with us. So, just as though he were here, other than he won't be asking any questions. So, will you call the first case please? 3-13-0-1-1-9 People of the State of Illinois Appellee by Laura DeMichele v. Alex Moreno Appellate by Lucas Walker Mr. Walker. Your Honor. May it please the court. Good morning, counsel. My name is Lucas Walker with the State Appellate Defender's Office. I do represent the defendant in this case, Mr. Alex Moreno. Your Honors, we'd like to focus on the first issue in our brief, if time to second as well. The first issue being that Mr. Moreno wasn't proven guilty beyond a reasonable doubt of the offense of reckless discharge of a firearm. As noted by the Illinois Supreme Court, that offense has two elements. First, the state needs to prove that Mr. Moreno recklessly discharged his firearm. And two, they need to prove that he endangered the bodily safety of an individual in doing so. The state failed to prove both of those elements here. As to the first element, recklessness for purposes of this offense is defined as a conscious disregard of a substantial and unjustifiable risk that the bodily safety of an individual was endangered. That wasn't proven here. We can look to case law. Essentially, in case law, there's two different fact patterns that crop up. One, defendants are either shooting their firearms into the air, or two, they're shooting their firearms into the ground, but in the direction of a person in order to scare or intimidate that person away from them. As to the first factual scenario, this court in 2005 decided people be Watkins. And in that case, the defendant took a .40 caliber semi-automatic pistol from the home, discharged it four times in the air in a residential area, and unsurprisingly, this court found that to be reckless. But Justice McDade did, in her dissent, make a great point, and that was that the legislature did not make any discharge of a firearm in a residential area a crime, but rather, obviously, it is a reckless discharge that's a crime. Well, there is usually a charge, I mean, I don't remember the statute, but at least most cities have ordinances about discharging a firearm within the city limits or that kind of stuff, right? There could be some, and in fact, the court here floated the possibility of it maybe being disorderly conduct. But the argument here is that it certainly wasn't a reckless discharge of a firearm. We discussed Watkins. We can also look to People v. Collins, which was an Illinois Supreme Court case, same year. It dealt specifically with the endangerment element, but that's only because the parties all agreed that it was reckless. And in that case, again, defendants were shooting firearms up into the air. That was also on New Year's Eve. But in that case, there was a 9mm being fired into the air and an AK-47. They were discharged an uncountable number of times, although a careful reading of the case would demonstrate that it's likely between 60 and 75 times. The defendants ran off when police showed up. They were eventually captured. And as I stated, that had been decided by all the parties that yes, that was reckless. The question there was whether there was endangerment. Obviously, those factual patterns are distinguishable from the current one. Here, Mr. Moreno is not discharging his firearm aimlessly up into the air. Instead, he is deliberately discharging his firearm into the ground. As he testified, he had developed a habit of doing so. He had taken a firearms training course in the past and had realized, of course, that shooting upwards is an unacceptable risk. There was no ricochet or injury from this incident. He also testified that he had discharged his firearm from the same spot on his deck on prior occasions, including leading up to this incident earlier today, as well as prior celebratory occasions, such as the prior New Year's and the prior 4th of July, with no evidence of any reported injury or ricochet resulting from those discharges. What about People v. Post? Sure. People v. Post, Illinois Supreme Court case, in that case, that's one of the factual scenarios here. We go into the different ones where they are discharging into the ground, which, of course, is more applicable. People v. Post is a case that dealt specifically, and the state points this out and we acknowledge it, that it dealt specifically with involuntary manslaughter. It's a higher standard of recklessness that needs to be met there. But it is instructive as to the recklessness of a discharge of .22 caliber in a residential area, which is what occurred in that case. In that case, the defendant believed the man to have attempted to be breaking into his home. He got his .22 caliber, went outside around 9 p.m. at night. At that point, the man who he believed was trying to break into his home had left, got into his car, and was driving away. The defendant didn't stop pursuing him, but instead discharged his .22 caliber toward the ground in the general direction of the man, who was now in his vehicle, in order to – now he'll definitely stay away. He wanted to scare him off. Well, the bullet ricocheted into the vehicle and struck the man in his aorta, killing him. The Illinois Supreme Court said that the discharge of a .22 caliber into the ground is not per se reckless and does not meet the higher recklessness standard for involuntary manslaughter, where rather than the endangerment of the bodily safety of an individual, that requires that the district guard is at risk of great bodily harm or death. But the point being there, yes, the Illinois Supreme Court specifically stated that did not meet the involuntary manslaughter level of recklessness, but also stated it's not per se reckless. That's what we'd like to take away from that case. And now, here's another case that deals with this scenario of discharging firearms into the ground. State brings this up in their brief and argues that it's the most applicable case. People v. Johnson. In People v. Johnson, three men approached the defendant. One of them has a broom handle. Apparently, these three men were called by their female relatives earlier in the night and told that the defendant had somehow rattled them or startled them. So these three men approached the defendant at his home. The defendant comes out. There's words exchanged. Tensions are flared. Next thing you know, the defendant is discharging a firearm into the ground from his porch. The three men back off and go to the sidewalk of his home and say, Okay, we're not going anywhere. We'll stay on the sidewalk. We're not coming any closer, but we're not leaving until the police arrive, and we've called the police. Well, at that time, the defendant had now moved from his porch, is in a different spot, and discharges his firearm again into the ground. This time it ricochets and strikes one of them in his chest. It doesn't kill him. The court there found that the first discharge was not reckless. He had a sincere belief that his life was in danger. The second discharge was because he no longer had a sincere belief, for the men had retreated, and he didn't. That case is obviously, along with these scenarios of discharging the firearm into the ground in the direction of a person, is obviously and materially distinguishable from this current case, where, again, Mr. Moreno did not discharge his firearm in the direction of anybody. That's from the officer's testimony, but instead deliberately discharged, as he had on other occasions, in fact, developed a habit of discharging into the ground from his deck at an angle. So the description the officer gave is that he had his arm over the railing at an angle down into the ground, and what he discharged his firearm into was described by the officer as dirt under grass. And again, we'd like to stress, the thing that makes this case unique and presents this case with a unique scenario is it's not shooting aimlessly into the air. It's not discharging the firearm into the ground in the direction of another person for purposes of scaring that person off. This is a situation where the defendant has discharged his firearm into the ground, as he had on prior occasions, with no evidence of any resulting injury or ricochet from having done so. So our argument is that this does not rise to the level of a conscious disregard of a substantial and unjustifiable risk. So we've distinguished those cases where they shoot upwards and downwards. The State does mention a couple of other cases, including Kerrigan, but that is not a criminal case. That is a case where it's reviewing an administrative board hearing. Obviously, the standard proof is different. There is preponderance of the evidence here. It's beyond a reasonable doubt, but it's also distinguishable on the facts. And in that case, a police officer was found to have acted reckless, where he found marijuana in his home. His wife had had marijuana in the home. The police officer grew very upset, even testified he lost his head, lost control, and shot his toilet bowl in his home. Well, that's obviously different. This is not inside. It's not a toilet bowl. Toilet bowls, of course, are typically porcelain. This was shooting into grass and dirt. So these cases are distinguishable. So, again, we would just argue that the recklessness element simply wasn't proven, where there was no conscious disregard of a substantial and unjustifiable risk. As to the second element, the second element is that, as noted in Collins by the Illinois Supreme Court, that the State needs to prove that this reckless conduct endangered the bodily safety of an individual, such that a person was put in a dangerous situation, put in a position in peril of probable harm or loss. Now, Collins, as we've discussed a little bit already, dealt specifically with this problem. But that case is distinguishable, again, on the facts, where there was AK-47 and 9mm being shot into the air an uncountable number of times in a residential area. Of course, and as the State points out, I mean, it's true, it's obvious risk of ricochet when bullets are aimlessly falling to the ground. But that wasn't the case here. This was a deliberate discharge downward into grass and dirt, as he had done on prior occasions. Again, we'd like to stress he did take a firearms training course. He did do a risk assessment, realizing that shooting upwards was unacceptable. And he had done so on prior occasions without any evidence of resulting injury or ricochet. So we would simply distinguish that on the facts with Collins and argue that here, because it was a deliberate discharge downward, because the evidence suggests there were no materials in the ground that would create a ricochet, because simple fact is there was none, and the officers testified themselves that he shot into grass and dirt. It just was not endangerment that is required for purposes of this offense. If there is no questions on the first issue there, I would just go into the second briefly. The second issue we have is that should this court disagree and say, no, we think that was reckless discharge, we still argue, and I should reiterate that the relief we're requesting for that first issue is that this court reverses the conviction of reckless discharge of a firearm outright. But should this court disagree, we still ask this court respectfully to remand the case for a new trial. And that's because we argue the court relied on facts, not on evidence, when it found Mr. Moreno guilty of this offense. It's well established that the court cannot rely on facts discovered through private knowledge or private investigation in determining that a defendant is guilty. The state needs to present that evidence, and the court should rely on the evidence presented during the trial. Here, it's very obvious that the court did rely on either private facts, private knowledge, or private investigation. Either way, it relied on facts that were not put into evidence, where the court, and it's attached to the reply brief as well for your convenience, but the transcript, I should say. But the court explicitly said that where it comes to the reckless conduct charge, this was an old street, not a new subdivision. First, there's no evidence that it was an old street and not a new subdivision. But more to the matter, there's no evidence that an old street versus a new street or an old versus a new subdivision contains more ricochet-causing materials than each other. There's just no evidence as to that. But even more damaging was the fact that the court continued and said, yeah, in that particular area, there's all kinds of things buried underground that could cause a ricochet, such as bricks, concrete, steel, even drainage tile. Drainage tile was never mentioned at all during the trial. The officers did testify, of course, yes, there's a risk of ricochet if the ground is not prepared. And the reason that would be a risk is because there may be certain materials underneath the ground that could cause a ricochet, such as, and they riled off a few things. I think they did say maybe bricks, concrete, steel, things of that nature. But they never took it a step further. Let's try another attack here. I mean, just because there's a risk that something somebody does could conceivably cause an injury, that doesn't make the action reckless, does it? Right. This would have to, as we just discussed earlier, there's certain ordinances that could create a lesser offense of disorderly conduct or things of that nature. But our argument here is that the risk here requires a conscious disregard of a substantial and unjustifiable risk, not simply, you disregarded a risk there. People disregard risks every day. They may not look left or right before they cross the street. That's a risk. But is that a substantial and unjustifiable risk? Here, the argument is simply that it didn't rise to that level. And again, as to this issue, the second issue, the court explicitly relied on facts that were not in evidence, where the officers testified the risk is that certain materials could be there but didn't take it a step further and actually established that there were certain materials present. So the court simply came up with that on its own. And we can look to people who Wallenberg, which is the case we point to for essentially establishes this rule. And in that case, the court was found to be in error and the case was reversed where the defendant's alibi was that, well, I wasn't at the crime location because I was here in this area. I had a flat tire and there were no gas stations. I couldn't get out of there. Counsel has two minutes. My time is running out. I will just, I can stretch a minute. So he said, that alibi, I don't believe it because I've been in that area and there are gas stations. Well, that was found to be private knowledge, private investigation, not put in the facts at trial. That was reversed. State sites to people became, but in that case the court took notice of very common facts, traffic times between 4 and 4.40 p.m. Here it's more egregious than either of those cases where it's finding certain specific materials, bricks, concrete, steel, even drainage tile underneath the ground in Marino's backyard. That is not something that the general public would know. That's something that comes from private knowledge or private facts and certainly was not put into evidence. So as a result of that, we would argue that this court should, if it disagrees with us on Issue 1, still remand the case for a new trial. Now, this was not preserved. We argue that the court can review this because forfeiture rules are relaxed when the court is argued to be at error, but even if that is not the way this court reaches it, it can reach it through plain error where this is error as we discussed, evidence was closely balanced as we discussed in Issue 1, and it does deprive the defendant of his due process rights to a fair trial where the state's burden is diluted by the court simply finding the facts on its own rather than holding the state to the burden of proving it itself. With that, we simply request that this court reverse the conviction or, if not, to at least remand for a new trial. Thank you. Thank you, Mr. Walker. Ms. DeMichel. May I please support, counsel? Lord DeMichel, on behalf of the people. Defendant was proven guilty beyond a reasonable doubt. Defendant recklessly discharged a firearm when he shot into the ground of a small yard in a residential area, risking a ricochet. Let me ask you this. What is the substantial and unjustifiable risk that the defendant is surviving? The risk that the bullet would ricochet and hurt someone. And so the Watkins case discusses other analogous cases involving substantial. What was that bullet going to ricochet off of? He shot it in the dirt. Well, the officers testified that when you don't know what's buried underneath a yard, and a yard is just a yard, it accompanies a house, it's not prepared for shooting, the danger exists because of not knowing what's underground. They testified that it could be rocks, it could be concrete, it could be anything metal, anything underneath there that the bullet could strike and ricochet off of. So the risk is in the not knowing what's there. So if you perform an act that could conceivably, if something might be there, cause an injury, that makes the act reckless? Well, this is analogous to the cases in Watkins. And so Watkins finds that merely, Watkins pointed to three examples of other reckless actions. Merely pointing a gun at another, driving while speeding and weaving, and drawing a loaded gun in a crowded tavern. Now, not every time you draw a loaded gun in a crowded tavern is someone going to end up getting hurt. Or even when you shoot a bullet up into the air, you know, it could fall. Chances are it's not going to fall where someone is, but it could fall where someone is. So the risk there is that it could hit someone, even though oftentimes it's not going to. So it's just the risk. Of course, he didn't shoot it into the air. My odometer says I live about 100 miles from the collar counties in Cook. But I think it might be, in some respects, it's a million miles away, because down where I live, people, it's not unusual for people to shoot guns into the ground. It's reckless. Could something happen? Could there be a ricochet? The Supreme Court did say that it's not per se reckless to shoot a gun into the ground, right? But so in this case, the defendant, there was nobody standing as close, like from me to you, that distance, where if it did hit something, it hit it. Well, there were, I think, six other people on the porch with defendant, and then there were two people in the yard, I think, about 20 feet away. But not in front of him. Not directly in front of him, no. However, with the ricochet, it could go the directions, unpredictable, too. So those two in the yard. And in Watkins, there was no – For a bullet to change directions by 180 degrees, it has to stop first. That's a bounce, not a ricochet. It's got to bounce back out of the dirt. Well, in Watkins, there was no evidence that where the trajectory of the bullet was was headed towards the people that were found to be in the area in that case. And Collins specifically found that a bullet doesn't have to be discharged in the direction of someone in order for it to qualify as reckless. Okay, but dirt stops bullets a lot faster than hair does, right? It does, but the two officers, both who were firearms instructors, testified that, yeah, if it's just dirt, that's going to be fine. But here, when it's a residential yard, just accompanying a house, and it's obviously not been prepped for shooting as there were shells in the yard. What was under that dirt? It could have – there could have been – No, no, what there could have been, what was under there? The state shows under that dirt that was a ricochet. The state hadn't dug up the yard and introduced into evidence all the items that were in it because the officer testified what the risk was was that there could have been bricks, anything metal, concrete. And plus the yard was only – I think the defendant estimated 10 to 20 feet across, so he's shooting down into that ground. And if he – it's bordered by sidewalks on both sides, brick pillars with fence on one side. So if his aim had been impaired by the beers he admitted that were easy to chug down, he could have hit the sidewalks or the brick pillars too, which would have increased the risk of a ricochet as well. And the Johnson case found that shooting into the ground was reckless. Regarding the endangerment, Collins just refers to that it's what it could or might result in harm that is sufficient to satisfy endangerment, and it doesn't require the firearm to be discharged in the direction of anyone. But it's still got to be a substantial and unjustifiable risk, right? Correct. Otherwise, everything we do, when you get in your car and drive away from here, there's a risk that you're going to hurt somebody, right, with your car. Right, right. So driving while speeding and weaving, not every time a person drives while speeding and weaving are they going to hit someone either, or not every time if a person merely points a gun at another. I'd say that's probably the most analogous case from within Watkins. Pointing a gun at another, if you don't fire it, no one's going to get hurt, but the risk that it could go off when you don't intend it to is the risk there that makes it reckless. Regarding the second issue, the trial judge said he found the act reckless because it was an old residential area where there's all kinds of things buried underground, any of which could cause a ricochet. There are pictures of the neighborhood that defendant introduced, and you can tell it's not a new subdivision from those pictures. And the officers had testified that it was not knowing what was in the ground that could create a ricochet that created the risk. So when the judge says, yeah, well, there's things that are underground, so there could be a risk, I think he was just applying that testimony. So why is an older neighborhood more likely to have hard objects under the dirt than a new neighborhood? Well, either one could have stuff under it, and either one having stuff under it was the risk. Although, you know, if it's torn up and redone, you know, things could have been left behind, and new subdivisions usually just come from fields. But I think the judge found that if it were out in the woods, it would have been different. If it were just blanks, it would have been different. So I don't know if he even hinged it on that it had to be the old neighborhood, but he just believed, yeah, there could be stuff under the ground. The officers testified that was what the risk was, so he found it reckless. Well, I guess where I'm going, though, is, okay, yeah, you know, the stars could have lined up just right, and something bad could have happened, and somebody could have got hurt, okay? But is that the test that you look at to decide whether an action is reckless? Well, gee, if A, B, C, and D would have happened, somebody could have got hurt. Is that how we define recklessness? Well, it is the substantial and unjustifiable risk. That's why in Post and Johnson, when the bullets were justified, it was not reckless. But, again, I think it's analogous to the Watkins situation where, you know, he shot those four bullets in the air. None of those bullets struck anyone. There was no evidence that any of those four bullets was headed towards anyone's direction. He specifically said he wasn't shooting at anyone and wasn't trying to hurt anybody, but it was the possibility that one of those could have fallen, and that still made it reckless in that case. Well, I guess from somebody who's been around guns all his life, including shotguns, and guns like pistols or rifles that shoot a single projectile, that there's a huge difference between shooting into the air and, as far as safety-wise, shooting into the dirt. Do you see any difference in those two? It's true that there is a difference, but the risk is still substantial that the risk could occur, just because of the harm that could occur if it did occur. Is it the state's position that it's the same shooting into the air as the same shooting into the dirt, because you're creating the same risk you would as shooting a bullet into the air in a populated area? They're both reckless. That's the state's position. Thank you, Your Honors. All right. You've done it. Any further questions? All right. I just wanted to be clear on issue number two, where we argued that the court did rely on facts, not on evidence. The state seems to have suggested that the court said, well, there could have been things there. The court explicitly said there were. Reading off the transcript, the court says it's an old street in Joliet. It's an old area where there are all kinds of things buried underground, bricks, rocks, concrete, steel. A lot of that stuff still exists underground, even drainage tile, any one of which would have caused a ricochet. It did not, but I think it's reckless conduct in that particular area. So we just want to stress the fact that we're not suggesting that the court simply drew a reasonable inference that things may have been there. The court said in that particular area, there are certain things underground that could cause a ricochet, and that was never presented in evidence. I have a question for you. Sure. Can the individual harmed be the gunman, the person discharging the bullet? The individual harmed for this reckless conduct? Are you referencing the injury to the hand? The fact that he was intoxicated and took the gun and shot his own hand, just to prove that it wouldn't hurt anybody, and what happened? He hurt himself. Well, first we would suggest... So my question is, can the individual harmed be the person who just charges the firearm? We would say that the standard is endangerment to the bodily safety of an individual. Certainly that could be... So my question is... Certainly. Certainly. Our argument to that would be that at best there's contradictory and vague testimony regarding that incident. One of the officers said nobody was injured. The officer said no one was injured. Oh, but Mr. Moreno... You've answered my question. Another question I have is, did this take place near Justice Schmidt's home in rural wherever? Peoria County? Well, this was in Peoria. Dirt road to dirt road. This was in Joliet. So I would say no. No. Was the judge justified in considering the fact that this didn't occur out in the country? Oh, sure. It occurred within a residential neighborhood? I think that's a completely reasonable consideration, that it occurred in a residential area. It's a different... when no evidence was presented as to those facts. Does the purpose of the discharge of the firearm have any role in the consideration of whether this event was proved or not? And as an example, I know Justice Schmidt likes to shoot at ducks occasionally. I don't know how many he actually hits, but on occasion he does shoot at them. Sure. Here the purpose was not hunting-related. It was some other purpose. What was the purpose? This was a celebratory occasion. This was a New Year's Eve celebration. And to answer your question, I think sure, the purpose does come into play. We know that because in those cases where the defendant is shooting towards the ground in the direction of another person without being in fear of his life, well, that's reckless. You can't shoot in the direction of another person toward the ground if you don't fear for your life. Is it reckless to shoot at the ground after drinking alcohol on New Year's Eve with six or seven people in the area? Well, no. Our opinion is that it doesn't rise to the level of recklessness required for this offense. And we want to stress that, yes, Mr. Reno admitted and was completely cooperative with the officers, but admitted he drank six to seven mini Corona bottles throughout the course of the night. Those are commonly referred to as Coronitas. Those are seven ounces each, which would amount to about three to three and a half full-sized beers throughout the course of the night. There was no testimony by the officers that he appeared intoxicated or impaired or was acting disorderly. And just like the Illinois Supreme Court – There were no blood tests. There was no indication this man was drunk. Absolutely not. And just like the Illinois Supreme Court said, well, discharging a firearm into the ground in a residential area is not per se reckless, there's no rule that says the ingestion or consumption of alcohol is per se impairment. There simply was no evidence that he was impaired whatsoever. So – One more question for you. Sure. The fact that it was – I think everybody agrees they were blanks, at least that he discharged later. He admitted he had discharged a couple of live rounds earlier. But the fact that it was blanks and not a live round, does that factor into your analysis at all? Well, we want to make sure we make clear that the credibility determination of the court was that there was a mixture of live and blank rounds discharged. So we're not trying to skirt around that. Thank you for clarifying. Sure. So that was – the credibility determination being what it was, we're just accepting the fact that the credibility was that there was a mixture of live and blank rounds. But still relying upon our other arguments that having taken a firearms training course, having assessed the risk, determining that shooting upwards was unnecessary and unacceptable, having previously discharged the firearm without any evidence of resulting injury or ricocheting – I wouldn't speculate. I can say that – December 29th. Perhaps, no. Let me ask you this. Was – and the basis for the reckless conduct charge was not – the factual basis for that was not shooting himself in the hand with a blank, right? Correct. So that wasn't the basis for the reckless charge. Correct. And we want to point out that Mr. Raynor declined any medical attention. He was not turned away from the Will County Adult Detention Center. And at best, that was contradictory testimony by the officers that an injury even occurred. And, you know, as he was charged with, the discharge was January 1st, 2012. We don't even know when that injury occurred. So it could have been the day before. So thank you very much. Thank you. And, Mr. Michael, thank you for your arguments here this morning. The matter will be taken under advisement, as indicated earlier. Justice Litton will be participating, and a written disposition will be issued right now. But we're going to brief recess for a panel change for the next case. Thank you. Thank you, Mr. Price. We'll have an outstanding recess.